## PIGEON RIVER IMPROVEMENT, SLIDE & BOOM CO. v. CHARLES W. COX, Limited.

### No. 9547.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1933.

John D. Jenswold, of Duluth, Minn. (Jenswold, Jenswold & Dahle, of Duluth, Minn., on the brief), for appellant.

Edward L. Boyle, of Duluth, Minn. (Fryberger, Fulton & Boyle, of Duluth, Minn., on the brief), for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Appellant is a corporation organized under and authorized by the laws of Minnesota as a slide and boom company to construct dams and sluiceways and other improvements along the channel on the Minnesota side of the Pigeon river. The Pigeon river is, by the terms of the Webster-Ashburton Treaty of 1842 (8 Stat. 572), made part of the international boundary line between the United States and Canada. It is a small stream between the northeast corner of Minnesota and the province of Ontario, and flows a distance of about thirty miles into Pigeon Bay on Lake Superior. Appellee is a Canadian timber dealer, and floats timber cut from Canadian lands down the Arrow river in Canada into the Pigeon river en route to Lake Superior. In 1928, 1929, and 1930 appellee

drove quantities of pulpwood and railway ties down the Pigeon river, and in so doing made use of appellant's improvements, refusing to pay tolls thereon. Appellant brought this action in the state court for their collection. It was removed to the United States District Court. An amended complaint was filed. Appellee demurred on the ground that the facts stated were not sufficient to constitute a cause of action. The court sustained the demurrer without leave to amend and entered judgment of dismissal. This appeal followed.

The case involves the construction of that part of article 2 of the Webster-Ashburton Treaty of August 9, 1842, 8 U. S. Stat. 572, 573, which reads as follows: "That all the water communications and all the usual portages along the line from Lake Superior to the Lake of the Woods, and also Grand portage, from the shore of Lake Superior to the Pigeon river, as now actually used, shall be free and open to the use of the citizens and subjects of both countries."

All of appellant's improvements and works with the exception of a certain flooding dam lie in the portion of the river between Fort Charlotte and its mouth.

It is appellant's contention (1) that the Pigeon river from its mouth to Fort Charlotte is not "a water communication" within the meaning of this provision of the treaty, and that it was not "actually used" as such at the time of the treaty or at any time before that, and that therefore the provisions of the treaty do not apply to that part of the river where appellant's improvements are located; (2) that the words, "free and open," as used in the treaty, do not imply freedom from tolls or charges for the use of improvements in aid of the flotation of logs.

Appellee's claims are: That the Pigeon river from shore to shore was made a boundary water by the Webster-Ashburton Treaty; that it is one of the water communications between Lake Superior and Lake of the Woods referred to in said treaty; that the movement of Canadian wood on the Pigeon river is foreign commerce, over which the state of Minnesota has no control, and that said state has no authority to grant the right to appellant to collect tolls on the Pigeon river; that such collection is in violation of the Webster-Ashburton Treaty.

This case is a companion one to Clark v. Pigeon River Improvement Slide & Boom Co. (C. C. A. 8) 52 F.(2d) 550, 555, and the essential facts are the same in the two cases. Some of the questions here were also involved in Rainy Lake River Boom Corp. v. Rainy River Lumber Co., Ltd. (C. C. A. 8) 162 F. 287.

In the Clark Case we considered the provisions of the Webster-Ashburton Treaty involved here, and went into the matter rather thoroughly, consulting the diplomatic correspondence between the authors of this treaty in order to throw light on the meaning of the terms employed. Our conclusion in the Clark Case was against the theory advanced by appellant in this case, and we held that the movement of Canadian pulpwood on the Pigeon river was foreign commerce over which the state of Minnesota could exercise no control, and that the collection of tolls on this river under grant of a franchise by the state of Minnesota would be a violation of the Webster-Ashburton Treaty.

Nothing new is presented here, except possibly some additional correspondence between the parties to the treaty, and this further situation: In our opinion in the Clark Case we quoted from the Canadian court in the case of Arrow River & Tributaries Slide & Boom Co., Ltd., 39 Ont. Wkly. Notes 434, 66 Ontario Law Reports, 577, where the Canadian court had held that under the Webster-Ashburton Treaty the Pigeon river was to be "free and open" for the nationals of the two contracting parties, and that meant the slide and boom company there had no right to build upon the bed of the Pigeon river anything which would interfere with the enjoyment of free and open use of it by the citizens of the United States, and held against the alleged right to fix any tolls upon the use of the Pigeon river. This case was appealed to the Supreme Court of the Dominion of Canada, and, after our decision in the Clark Case, that court on March 15, 1932, reversed the provincial Supreme Court, and held that the treaty did not forbid the collection of tolls for the use of the Arrow River Company's improvements in the river. So a rather unusual situation is presented and a seeming conflict between our decision and that of the highest Canadian appellate court. Some of the judges in the Canadian appellate court agreed with certain parts of our construction of the treaty, and, while the judges reversed the case, they are not at all in harmony as to the meaning of certain of the phrases used in the article in question.

It was frankly conceded in argument that, unless this court was willing to reverse its decision in the Clark Case, appellant was not entitled to a reversal of the judgment of the federal court. In the printed argument of counsel for appellant, it is stated that our

decision was largely based upon the decision in the Canadian court. That statement is not entirely accurate, as we construed the provisions of article 2 of the treaty in question in the way we thought they should be construed in the light of the diplomatic correspondence and the language of the provisions. We cited the decision in the Arrow River & Tributaries Slide & Boom Co., Ltd. Case, as in line with our conclusion, but we did not base our decision entirely upon that case. If the question were now an original one, we should feel that, in view of the conflicting decisions as to the construction of this treaty, it would be proper to certify the questions to the Supreme Court for advice, but, as we have in the Clark Case expressed our opinion as to how these provisions should be construed, we would not, we think, be warranted in asking the advice of the Supreme Court in relation thereto, unless satisfied at least that our former decision was erroneous. We are not so satisfied.

In view of the holdings of this court in the Clark Case, supra, and the Rainy Lake River Boom Corp. v. Rainy River Lumber Co., Ltd., supra, the demurrer to the amended complaint in this case was properly sustained, and the judgment of the trial court is affirmed.